**BERKMAN, HENOCH, PETERSON & PEDDY, P.C.**
Attorneys for Excel Capital Group Corp.
100 Garden City Plaza
Garden City, New York 11530
(516) 222-6200
Bruce D. Mael (BM 8038)

| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT | Return Date: 9/17/09 |
| EASTERN DISTRICT OF NEW YORK | Time: 11:30 a.m. |

-----------------------------------------------------------X
IN RE:                                    Chapter 7

      AMARJIT KAUR SINGH,                Case No. 08-47147-CEC

                       Debtor
-----------------------------------------------------------X

**OBJECTION OF EXCEL CAPITAL GROUP CORP.
TO TRUSTEE'S MOTION FOR AN ORDER: (i) COMPELLING
EXCEL CAPITAL GROUP CORP. TO IMMEDIATELY TAKE
ALL STEPS AND PROVIDE ANY AND ALL DOCUMENTS
NECESSARY TO CLOSE THE AUCTION SALE OF REAL PROPERTY
LOCATED AT 930 HEMPSTEAD TURNPIKE, FRANKLIN SQUARE, NY;
(ii) AUTHORIZING THE BIFURCATION OF EXCEL'S CLAIM
PURSUANT TO 11 U.S.C. §506(a)(1); AND (iii) AWARDING TO THE
TRUSTEE THE REASONABLE ATTORNEYS' FEES AND COSTS
<u>OF THIS MOTION</u>**

**TO:   THE HONORABLE CARLA E. CRAIG,
        CHIEF UNITED STATES BANKRUPTCY JUDGE:**

Excel Capital Group Corp. ("Excel"), a secured creditor of the above-captioned Debtor, by its attorneys Berkman, Henoch, Peterson & Peddy, P.C., hereby objects to the Motion ("Motion") of Richard McCord, as Chapter 7 Trustee of the Estate of Amarjit Kaur Singh ("Trustee") for an order: (i) compelling Excel to immediately take all steps and provide any and all documents necessary to close the auction sale of real property located at 930 Hempstead Turnpike, Franklin Square, New York (the "Premises"); (ii) authorizing the bifurcation of Excel's Claim pursuant to 11 U.S.C. §506(a)(1); and (iii) awarding to the

Trustee the reasonable attorneys' fees and costs of this Motion. In furtherance thereof, Excel respectfully sets forth and alleges as follows:

## BACKGROUND

1. Excel is the holder by assignment of a Note and Mortgage dated April 10, 2006, given by the Debtor in the original principal amount of $165,000.00, pledging the Premises as security.

2. As of the date set forth herein, Excel is owed in excess of $256,166.14 on account of said mortgage lien. A copy of Excel's most recent payoff letter, dated August 24, 2009, is annexed hereto as Exhibit "A".

3. As set forth in the Motion, Excel and the Trustee entered into a "Carve-Out" Stipulation which was so-ordered by this Court on February 20, 2009 (a copy of which is annexed hereto as Exhibit "B"), wherein Excel and the Trustee agreed to carve out a portion of the proceeds of sale subject to Excel's lien for the benefit of the Trustee, his professionals, and the estate, even though Excel would likely receive less than the full amount of its lien as a result. Specifically, the Carve-Out Stipulation provides at paragraph 1 as follows:

> Excel agrees to a carve out pursuant to §506(c) of the Bankruptcy Code (the "Carve Out") from the proceeds of the Collateral in an amount not to exceed: (a) ten (10%) percent of the total of all timely filed and allowed unsecured proofs of claim; (b) the Trustee's commissions and expenses and compensation and expenses to the Trustee's attorneys, not to exceed $10,000.00; and (c) compensation of 3% of the sales price to the Trustee's real estate broker.

4. Moreover, paragraph 4 of the Carve-Out Stipulation states that "[t]he Trustee hereby waives (for himself, his successors and his professionals) any other right to seek compensation from the proceeds of the Collateral pursuant to §506(c) of the Bankruptcy Code other than what is set forth herein".

5. The Trustee is correct in stating that a second auction sale was conducted on July 13, 2009, after the successful bidder at the first auction sale defaulted by refusing to close. The successful bid at the second auction sale was $261,000.00, significantly less than the original bid.

6. On or about August 18, 2009, counsel for the Trustee contacted Excel's real estate counsel and requested that Excel provide a Satisfaction of Mortgage, Stipulation Discontinuing Foreclosure Action, and Stipulation Cancelling Notice of Pendency ("Satisfaction Documents"). Excel's real estate counsel requested that the Trustee provide an estimated closing statement setting forth the proposed distributions of the sale proceeds.

7. On or about August 24, 2009, Excel's real estate counsel received an e-mail from the Trustee's real estate counsel setting forth the proposed distributions, a copy of which is annexed hereto as Exhibit "C". Surprisingly, however, the e-mail contained a proposed distribution of $17,653.50 for the "trustee's commissions and expenses", in addition to the $10,000.00 which, notwithstanding the clear language of the Carve Out Stipulation, is described in the e-mail as "trustee's legal fees capped at $10,000". The e-mail did state, however, that the Trustee was intending to move this Court "to authorized the forfeiture of the $15,000.00 downpayment by the defaulting purchaser. Once the court issues a final order authorizing same, the $15,000.00 will be given to your client".

8. Excel's real estate counsel promptly expressed his objection to the proposed payment of $17,653.50 in addition to the $10,000.00 as contrary to the express terms of the Carve Out Stipulation, which states in clear, unambiguous terms that the $10,000.00 cap was for "the Trustee's commissions and expenses and compensation and expenses to the Trustee's attorneys".

9. The Trustee subsequently agreed that the $10,000.00 cap included commissions and expenses

3

(a copy of a letter from the Trustee to that effect is annexed hereto as Exhibit "D"), but abruptly reversed his position with regard to the $15,000.00 deposit from the defaulting bidder at the first auction sale, insisting that he was entitled to retain it as liquidated damages for the benefit of the estate. A copy of the Trustee's e-mail dated August 28, 2009, reflecting same and threatening to file the instant Motion if the Satisfaction Documents were not delivered to him is annexed hereto as Exhibit "E". Upon information and belief, the Trustee did not have a closing scheduled at the time of the above-referenced demand.

10. In response thereto, Excel's Real Estate Attorney explained his belief that Excel was entitled to the $15,000.00 as proceeds of the collateral[1] and that he could not deliver the Satisfaction Documents until there was a resolution as to the payoff amount, specifically who was entitled to the $15,000.00. A copy of Excel's counsel's e-mail is annexed hereto as Exhibit "F". The instant Motion ensued.

## ARGUMENT

11. The first item of relief sought by the Trustee is to compel Excel to provide the Satisfaction Documents to the Trustee, who claims that Excel's "refusal" to do so thus far has "held hostage" the Trustee and the closing of the second auction sale. Not only are the Trustee's allegations in this regard false, it is actually the Trustee who is holding Excel hostage. In fact, the instant Motion is nothing more than an attempt to harass and intimidate Excel into relinquishing its claim to the $15,000.00.

12. The Trustee cites no authority whatsoever, either in the Carve Out Stipulation or elsewhere, which requires a mortgagee to deliver a satisfaction of mortgage or stipulation of discontinuance prior to receiving payment of all amounts required to satisfy the loan. In fact, the usual and customary practice is

---

[1] The issue of Excel's entitlement to the $15,000.00 as proceeds of the collateral is addressed fully in Excel's Objection to the Trustee's Motion to retain the $15,000.00 as liquidated damages and have same deemed to be property of the estate ("Deposit Motion"), which is incorporated by reference herein.

4

that a mortgagee receives the payoff proceeds FIRST and thereafter, executes and delivers a Satisfaction of Mortgage and related documents.

13. It is also axiomatic that a pre-condition to execution and delivery of a satisfaction is agreement of the parties as to the payoff amount which, as described above, is notably absent here. Unfortunately, the parties were unable to resolve the issue of entitlement to the $15,000.00 without the assistance of this Court.[2] For the Trustee to demand under threat of sanctions that Excel provide Satisfaction Documents before the amount required to satisfy the loan is determined, however, is nothing short of unconscionable.

14. Notwithstanding the above, Excel has always been and remain ready, willing, and able to execute and deliver all of the Satisfaction Documents required by the Trustee once the payoff amount is determined, provided that said documents are not released for recording until Excel receives payment in full of all payoff amounts to which it is entitled.

15. The second prong of relief sought by the Trustee is to bifurcate Excel's Secured Claim pursuant to 11 U.S.C. §506(a). Excel does not dispute that an undersecured claim may be divided into a secured and unsecured portion under Section 506(a). Excel does, however, dispute that the amount of its secured claim should be fixed at $223,108.00, as Excel's position is that it is entitled to the $15,000.00 forfeited deposit, as set forth above and in Excel's Objection to the Deposit Motion. Consequently, Excel's secured claim should be fixed at $238,552.64, which is consistent with the express terms of the Carve Out Stipulation and applicable law, as cited in Excel's Objection to the Deposit Motion.

16. Finally, the Trustee seeks an award of attorneys' fees incurred in connection with bringing the

---

[2] The Trustee's Motion to determine entitlement to the $15,000.00 is returnable the same day and time as the instant Motion.

instant Motion which, he asserts, was necessitated by Excel's refusal to provide the Satisfaction Documents which, in turn, has delayed the closing on the second auction sale of the Premises and necessitated this Motion. Once again, the Trustee fails to cite any authority which would support his claim to an award of attorneys' fees. Moreover, the facts herein demonstrate that it is not Excel that has failed to comply with the Carve Out Stipulation and delay the proceedings; rather, it is the Trustee who, by demanding more money than he was entitled to under the Carve Out Stipulation and by demanding the Satisfaction Documents before the payoff amount was fixed, has caused the delay of which he speaks. Consequently, it is this Motion which is unnecessary and unwarranted and, as such, it should be denied in all respects.

**WHEREFORE,** Excel respectfully requests that this Court enter an Order denying the instant Motion in all respects, plus grant such other and further relief as is just and proper.

Dated: Garden City, New York
September 11, 2009

**BERKMAN, HENOCH, PETERSON & PEDDY, P.C.**
Attorneys for Excel Capital Group Corp.

By: /s/Bruce D. Mael
Bruce D. Mael (BDM 8038)
100 Garden City Plaza
Garden City, NY 11530
(516)222-6200

O:\BHPP Department Data\Bankruptcy Department Data\Bruce Mael\singh\compel - opp.wpd