**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X Case No.: 109-47147-CEC

**In re:**

                                        **Chapter 13**

**AMARJIT KAUR SINGH**

                              **Debtor**
-----------------------------------------------------------X

**1.** Mr. Richard McCord invokes section 11 USC § 1326(b)(3), and this court too attempted to find aid in this proviso while dealing with the issue of Administrative fees demands.  I submit that the assertion of this section is improper here,  as it is irrelevant. Further, for argument sake, let us say that court would invoke this section to pay Mr. McCord, then it must adhere to all the provisions of this section.

      a. It is respectfully submitted, though, that the courts created by statute can have no jurisdiction but such as the statute confers.  Christianson v. Colt Industries Operating Copr. 486 U.S. 800, 818 (1988) (quoting Sheldon v. Sill, How. 44, 449 (1850).

      b.      This court cannot use Section 105 or any doctrines of equity etc.,
to create jurisdictional basis or create substantive rights when underlying Code does not provide one.

**2.**      Why is this section not properly invoked by Mr. McCord?  To apply 1326 (b)(3), the following all conditions must be met (8-1326 Collier on Bankruptcy  1326.03):

      a**.**      The debtor filed a prior case under chapter 7. The references to a prior case makes clear that a trustee in a case that is converted to chapter 13 does not qualify under this provision because that case is the same case and not a prior case

      b.      The chapter 7 trustee in the prior case was allowed compensation.

c. The compensation was allowed due to the conversion or dismissal of the case under section 707(b). In other words, compensation for efforts to administer assets or otherwise administer the case is not permitted.

d. Some portion of the compensation awarded due to the conversion or dismissal has not been paid.

3. McCord clearly does not qualify for such payments on section 1326 as not all the conditions are fulfilled. This is the same case that converted to Chapter 13. Further this is not a conversion under 707 (b), its under section 706. Further Chapter 7 trustee did not ask, nor was he allowed a compensation in this case.

4. Now in case the court invokes section 1326 (b) for making payments to Mr. McCord, what must he get? He must get an amount:

a. Not exceeding the total compensation divided by the number of months in the plan (11 U.S.C. § 1326(b)(3)(A)).; and

b. It also cannot exceed the greater of (1) $25 or (2) 5 percent of the total amount payable to general unsecured creditors under the plan divided by the number of months in the plan. 11 U.S.C. § 1326(b)(3)(B).

5. Section 1326 (d) also is not much of a help in this matter. Section 1326(d) provides that notwithstanding any other provision in title 11 the compensation referred to in section 1326(b)(3) is payable and may be collected in a chapter 13 case, even if it has been discharged in a prior case, but it is payable only to the extent permitted by section 1326(b)(3). There has to be a prior case which is not the case here. Further there was no fees allowed to a trustee in previous version (chapter 7) of this case.

6.     McCord is not entitled to any payments from a chapter 13 estate and in case he is allowed, he **cannot get more than a maximum of 5 dollars a month** (5 percent of the total amount payable to general unsecured creditors (discover bank approximately 6000 under the plan divided by the number of months in the plan).

**ISSUE OF PEONAGE--INVOLUNTARY SERVITUDE .**

7.     This case becomes clearly an example of peonage, in case the court forces the debtor to make payments from her post petition sweat and labor for the debts of an estate. Congress passed the Anti-Peonage Act of 1867, though thirteenth Amendment was adopted in 1865.   Peonage is not identical to involuntary servitude. Peonage is a subset of the involuntary servitude prohibited under the Thirteenth Amendment.

    a.     In the seminal case of *Clyatt v. United States(*197 U.S. 207, 215-16 (1905) (the Court explained the concept of peonage as follows:

What is peonage? It may be defined as a status or condition of compulsory service, based upon the indebtedness of the peon to the master. The basal fact is indebtedness. As said by Judge Benedict, delivering the opinion in <u>Jaremillo v. Romero</u>, 1 N. Mex. 190, 194<u>:</u> "One fact existed universally; all were indebted to their masters. This was the cord by which they seemed bound to their masters' service." Upon this is based a condition of compulsory service. *Peonage is sometimes classified as voluntary or involuntary*, but this implies simply a difference in the mode of origin, but none in the character of the servitude. *The one exists where the debtor voluntarily contracts to enter the service of his creditor. The other is forced upon the debtor by some provision of law. But peonage, however created, is compulsory service, involuntary servitude*. The peon can release himself there from, it is true, by the payment of the debt, but otherwise the service is enforced.

**Voluntariness of An Act**

8.     McCord misses the issue when he says since the debtor volunteered conversion it cannot be involuntary servitude.

a. Involuntary servitude is not dependant on an involuntary application of an real or artificial obligation. It applies with equal force to voluntary acts.

b. Voluntary or involuntary nature of obligation is not an issue for the purposes of servitude. Clyatt v. United States, 197 U.S. 207, 216 (1905).

c. Clyatt Court concluded that regardless how it is created, peonage constituted involuntary servitude. Id.

d. It is immaterial that the debtor voluntarily entered into an agreement to perform the service. Bailey v. State of Alabama, 219 U.S. 219, 31 S. Ct. 145, 55 L. Ed. 191 (1911).

**Legal Coercion.**

9. The Supreme Court in the case of United States v. Kozminski held that involuntary servitude "necessarily means a condition…in which the victim is forced to work for [another] by the use or threat of physical restraint or physical injury, or by the use or threat of **coercion through law or the legal process**." U.S. v. Kozminski, 487 U.S. 931, 108 S. Ct. 2751, 101 L. Ed. 2d 788, 46 Empl. Prac. Dec. (CCH) ¶38067 (1988).

a. The means and method of coercion or compulsion are immaterial. Bernal v. U.S., 241 F. 339 (C.C.A. 5th Cir. 1917); Pierce v. U.S., 146 F.2d 84 (C.C.A. 5th Cir. 1944).

b. The victim's vulnerabilities are relevant in determining whether the physical or legal coercion or threats could plausibly have compelled the victim to serve. Kozminski

c. Ms. Kaur is an old woman and is working over time and so are her children and husband with the expectation that there house will be saved. The family is reeling under extreme suffering, for they think that they will never be able to have a

house again. Further, that loss of his house will fracture their family structure.  Further, the family based on what I have been told has reduced dramatically their bare minimum things necessary for living so that they could come up with mortgage payments.  Ms. Kaur and her family knows that in case they cannot make payment, they will lose their house. Penalty will be dismissal of their case and lost of their home.

  d. Threat of harm has been recently clarified by,Congress recently enacted § 1589(c)(2) under the 2008 reauthorization act. Section 1589(c)(2) defines serious harm as any harm "sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances." id. It explicitly covers both physical and nonphysical harm, including psychological, financial, and reputational harm. Id.

  e. If there is no reprieve from this payment administrative claim of Chapter 7 Trustee,  she will have no choice but to work day and night to make payments.

  f. Even if the debtor says that she will waive all issues, for she wants to keep her house.  She cannot do so. While most constitutional protections can be waived, the Thirteenth Amendment's protections cannot.  Seth F. Kreimer, Allocational Sanctions: The Problem of Negative Rights in a Positive State, 132 U. Pa. L. Rev. 1293, 1386-89 (1984); see also Kimberly A. Yuracko, Education Off the Grid: Constitutional Restraints on Homeschooling, 96 Cal. L. Rev. 123, 154 (2008) (recognizing that Thirteenth Amendment protections cannot be waived). Other non-waivable constitutional provisions include Article III jurisdiction, the Establishment Clause, and the Eighth Amendment ban on cruel and unusual punishment. See id. at 153-54; Glenn Cohen, The Constitution and the Rights Not to Procreate, 60 Stan. L. Rev. 1135, 1191 (2008) (recognizing that Thirteenth Amendment protections cannot be waived).

10. Just because McCord can mask this demand of more than 23,000 dollars  as an administrative claim, it makes no difference for the purpose of creating an obligation on the debtor to make payments that it is labeled in such a manner.  Nature of debt is immaterial.  Peonage Cases, 136 F. 707 (E.D. Ark. 1905).

11.    In this case what makes it doubly painful is that it is not the debt of the debtor, it is debt of a third party that is the estate. Making the debtor to pay for the obligation of the estate is direct invitation to the scourge of peonage. It is not the debtor's own debt that would be payable with the threat of dismissing her case, it is the estate debt. Estate and Debtor are clearly two different entities. The house that the debtor wants to save was abandoned from the property of the estate. The debtor wishes to keep it and she is making payments regarding this secured obligation. She is doing so for she wants to retain that property. She is not under a compulsion regarding this debt. However in order to avail this process, if she is being compelled to make payments to the third party ( chapter 7 trustee) who has no ownership interest, that is peonage.

12.    The fact that the reward in this case, if she pays Mr. McCord shall be a permission to keep house is cruel and it shall not preclude a finding of forced labor. See United States vs. Bradley, 390 F.3d at 154.

13.    Debtor should not be forced to choose between the protections available under bankruptcy law and his or her Thirteenth Amendment right against involuntary servitude. [Local Loan Co. v. Hunt, 292 U.S. 234, 244 (1934)](#) ("One of the primary purposes of the Bankruptcy Act is to relieve the honest debtor from the weight of oppressive indebtedness, and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes.")

14.    Debtor should not be forced to "take it or leave it" choice . *Hunt*, 292 U.S. at 245: "From the viewpoint of the wage-earner there is little difference between not earning at all and earning wholly for a creditor. Pauperism may be the necessary result of either."

15.    This is a case where the debtor has no money to pay to anyone other than to the secured creditor. That too with immense sacrifices by the family.

**16.** Kaur will have to work many a extra hours to pay the debt of estate and not her own. Because she want to use Chapter 13, she is being compelled to make payments to Chapter 7 Trustee. Thirteenth Amendment prohibition against involuntary servitude is triggered when a law or force compels performance or continuation of service. U.S.C.A. Const.Amend. 13. In re Clemente 409 B.R. 288 Bkrtcy.D.N.J.,2009.

Compelling a debtor to work to repay a creditor, or control over a chapter 13 debtor's post-petition earnings, has long elicited fears of involuntary servitude. Take, for example, a well-known statement from *Local Loan Co. v. Hunt,* 292 U.S. 234, 245, 54 S.Ct. 695, 78 L.Ed. 1230 (1934):

> When a person assigns future wages, he, in effect, pledges his future earning power. The power of the individual to earn a living for himself and those dependent upon him is in the nature of a personal liberty quite as much as, if not more than, it is a property right. To preserve its free exercise is of the utmost importance, not only because it is a fundamental private necessity, but because it is a matter of great public concern. From the viewpoint of the wage earner there is little difference between not earning at all and earning wholly for a creditor. Pauperism may be the necessary result of either.

17. Case law is replete with two well-settled principles of involuntary servitude: (1) a relationship freely entered into can convert to one of involuntary servitude, and (2) where the level of coercion meets the legal standard, the mere fact that one held in involuntary servitude does not avail herself or himself of an opportunity to escape does not defeat a finding that the person is held in involuntary servitude.

18. One of the most important principles of the Thirteenth Amendment of the United States Constitution is that the right to one's labor is inalienable.

19. The property which every man has is his own labor, as it is the original foundation of all other property, so it is the most sacred and inviolable   The Slaughter-

House Cases, 83 U.S. 36, 110 (1883) (quoting ADAM SMITH, THE WEALTH OF NATIONS 151 (1776)).

**Raising Constitution Issues:**

20.     It is respectfully stated that the court must not read the text of the Code in such a way that would raise constitutional difficulties.  Rapanos v. United States, 126 S.Ct. 2208, 2224-25 (2006) (plurality opinion of  Scalia, J.); Cherokee Nation of Oklahoma v. Leavitt, 125 S. Ct. (2005); Zadvydas v. Davis, 533 U.S. 678, 696-99 (2001); Public Citizen v. United States Dept. of Justice, 491 U.S. 440 456-66 (1989); Edward J. Debartolo Corp. v. Florida Gult Coast Building & Constr.  Trades Council, 485 U.S. 568, 575 (1988).

21.     Bankruptcy Act should be construed inlight of its over purpose, to give a fresh start to the class of "honest but unfortunate debtor."  Marram v. Citizens Bank of Mass. 127 S. Ct. 1105, 1111 (2007).

22.     If this case had not been converted, McCord could have never been entitled to payments on this administrative claims.  Debtor would have never been compelled. Just because she is availing a legal process to save her house, she cannot be compelled to make payments to McCord.  What McCord can't get directly, he cannot be allowed indirectly--that is the basic fundamental tenet of law.

23.     Court cannot compel a debtor to give up one constitutional right ( right to freedom from labor or right to property) to avail the other right ( Right to avail judicial process of chapter 13).  Conditions (especially onerous ones) put before one could avail a constitutional right are void and per se illegal. Supreme Court has made it very clear that it shall not allow an entity to qualify the fundamental rights  of the individuals. Any restriction that has a chilling impact on exercise of constitutional right must be declared invalid.

24. Conditioning relief, which impinges of compromises other fundamental constitutional right are not valid. Shapiro v. Thompson 394 U.S. 618, 89 S.Ct. 1322.

    a. Asking Ms. Kaur to pay for a third party (McCord claim), an estate's obligation has a chilling impact on her right to property and right to freedom.

    b. It is clear that where any law or directions of court has 'no other purpose than to chill the assertion of constitutional rights by penalizing those who choose to exercise them, it is (is) patently unconstitutional." United States v. Jackon, 390 U.S. 570, 581, 88 S.Ct. 1209, 1216, 20 L.Ed. 2d 138 (1968).

    c. A constitutional prohibition cannot be transgressed indirectly by creation of statutory presumption any more than it can be violated by direct enactment, and the power to create presumption is not a means of escape from constitutional restrictions. Speiser v. Randall 357 U.S. 513 , 78 S. Ct. 1332 U.S. 1958.

    d. In this case, just because she volunteered to exercise a right under the judicial process, file a chapter 13 to reinstate a loan, she cannot be forced to give up her right that accrued that resulted from discharge of debt. In a criminal matter, in the case of United States v. Jackson, 390 U.S. 570, the High Court reasoned confronting Federal Kidnapping Act, "whether the constitution permits the establishment of such death penalty, applicable only to those defendants who assert the right to contest their guilt before jury. The inevitable effect of any such provision is, of course, to discourage assertion of the Fifth Amendment not to plead guilty and to deter exercise of the Sixth amendment right to demand a jury trial. If the provision had no other purpose or effect than to chill the assertion of constitutional rights by penalizing those who chose to exercise them, then it would be patently unconstitutional.

25. One more thing, that the court must see is that, by forcing the debtor to make payments of Administrative Claim in Chapter 13 from Post Petition income as a condition for confirmation would create impermissible classification among similarly

situated debtor. Debtor who files a new case cannot be compelled to make an administrative payments in the new case, incurred in the past case barring those enumerated under Section 1326 (b). All claims barring those enumerated under Section 523 are discharged. Even administrative claims are discharged. Similarly when the same debtor converts the case to Chapter 13, regarding the same issues, he cannot be compelled to make payments now. A compelling order to make payments to Chapter 7 Trustee would violate equal protection of law.

26. I am not suggesting that the bankruptcy code violates the constitution. But reading the code to mandate payments by the debtor's post discharge, post petition sweat and labor, to administrative claim of the trustee would definitely violate the constitutional norms.

Wherefore the trustee claims if any are to be confined to what he made in the liquidation of Chapter 7 case and Debtor be not burdened with onerous conditions to avail a judicial process.

Dated: New York, NY
November 3, 2010                                By:_____
                                                Karamvir S. Dahiya, Esq.